UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVAN LEE BECHTOL,

        Petitioner,                                      Case No.  1:09-CV-576

v.                                                    HON. GORDON J. QUIST

JOHN PRELESNIK,

        Respondent.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION
## IN PART AND REJECTING IN PART

Petitioner, Ivan Lee Bechtol, has filed Objections to Magistrate Judge Ellen S. Carmody's Report and Recommendation (R & R) issued August 29, 2012 (Docket no. 40), which recommends that this Court deny Petitioner's habeas corpus petition. The R & R also recommends that this Court grant Petitioner a certificate of appealability.

When a party properly objects to any part of a magistrate judge's disposition, this Court must review the disposition *de novo*. Fed. R. Civ. P. 72(b)(3). After conducting a *de novo* review of the R & R, Petitioner's objections, and the pertinent portions of the record, the Court concludes that the R & R should be adopted in part, and rejected in part.

Petitioner presents four objections to the R & R.  First, Petitioner objects that the magistrate judge erred in finding that the Michigan Court of Appeals did not unreasonably apply federal law regarding the ineffective assistance of counsel. The Court finds that Petitioner invoked his right to counsel and silence before he was arrested or given *Miranda* warnings. Although the Sixth Circuit has held that the government in criminal prosecutions may not comment on a defendant's prearrest silence as substantive evidence of guilt, *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000), the issue

presents a split among the federal circuit courts and is not clearly established Supreme Court precedent, *id.* at 282–83. As such, State Police Trooper Thomas George's testimony did not violate clearly established Supreme Court precedent and Petitioner's counsel's failure to object does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007). Moreover, Petitioner has the burden of overcoming the presumption that his counsel's action was sound trial strategy. *See, e.g.*, *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1996) ("Thus, trial counsel's tactical decisions are particularly difficult to attack. A defendant ... 'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'") (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). The Court therefore finds that the Michigan Court of Appeals did not unreasonably apply clearly established federal law as determined by the U.S. Supreme Court, and the Court will adopt the R & R with regard to this argument.

Second, Petitioner argues that the magistrate judge erred in finding that Petitioner's witness intimidation claim regarding Ryan Hittle is procedurally barred. The magistrate judge held it was barred because Petitioner failed to raise the claim on direct appeal or in a motion for relief from judgment. After careful review of the record, the Court agrees with Petitioner's objection and rejects the R & R with respect to the finding that the argument is procedurally barred. The Court finds that Petitioner *did* raise the argument with regard to Hittle—not just Charles Lee—despite that the Michigan Court of Appeals failed to address Petitioner's argument in its opinion issued November 30, 2004. Although Hittle's name is not mentioned in Petitioner's heading for argument I, (Pet'r's Br. on Appeal, at 16), beginning in the third paragraph, Petitioner argues that the prosecution attempted to suppress Hittle's testimony and discusses interactions between Hittle and

detectives, and later Hittle and the trial court (*Id.* at 16–18 & 29).  While not the central focus of the witness intimidation argument, the Court finds that Petitioner did raise the argument with regard to Hittle on appeal and it is not procedurally barred.

Where a state court did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer.  Without such results or reasoning, any attempt to determine whether the state court decision was 'contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).  In such cases, the court must "exercise [its] independent judgment" and review the claim *de novo*. *Id.* (citing *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002)).

As a matter of due process, a defendant has a fundamental right to present his own defense witnesses.  *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967).  Additionally, the Sixth Amendment provides the "right of an accused to have compulsory process for obtaining witnesses in [the defendant's] favor." *Id.* at 17, 87 S. Ct. at 1922.  Threatening or intimidating remarks by a trial court that deter a witness from testifying may deprive a defendant of due process under the Fourteenth Amendment.  *See Webb v. Texas*, 409 U.S. 95, 96–97, 93 S. Ct. 351, 351 (1972) (per curiam) (reversing a conviction where a trial judge severely admonished a defendant's sole witness regarding perjury and the witness then declined to testify).  A defendant's right to present witnesses to establish a defense precludes prosecutors and judges from improperly threatening witnesses with perjury prosecution.  *Webb*, 409 U.S. at 97–98, 93 S. Ct. at 351; *United States v. Thomas*, 488 F.2d 334, 336 (6th Cir. 1973) (reversing a conviction obtained after a secret service agent informed a defense witness that the government would prosecute him if he testified).  "'*Webb*, however, does not stand for the proposition that merely warning a witness of the

consequences of perjury demands reversal.'" *See United States v. Stuart*, 507 F.3d 391, 398 (6th Cir. 2007) (quoting *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995)). To the contrary, "the government has an obligation to warn unrepresented witnesses of [that] risk." *Id.* (quoting *Pierce*, 62 F.3d at 832). For a defendant to be entitled to relief, the government's inference with a proffered witness "must amount to a substantial interference with a witness's free and unhampered determination to testify before [a court] will find a violation of either due process or the Sixth Amendment." *United States v. Roach*, 502 F.3d 425, 437 (6th Cir. 2007).

In Petitioner's case, Hittle indicated at the time of trial that he would testify for the defense. (Tr. III at 262.) However, defense counsel advised the trial court that Hittle "had some questions regarding his status," and defense counsel was "worried about Fifth Amendment stuff." (*Id.* at 131.) This prompted defense counsel to request that the court appoint counsel to advise Hittle. (*Id.*) Upon the court's inquiry, and outside Hittle's presence, the prosecutor indicated to the court that he still "very much consider[ed Hittle] a suspect, and the investigation as to his involvement is far from over." (*Id.* at 132.) On the third day of trial, the court made a separate record outside the presence of the jury to examine Petitioner's proffered witnesses. (*See id*. at 256.) The court asked Hittle if anyone pressured, forced, or coerced him regarding the exercise of his privilege against self-incrimination. (*Id.* at 260–61.) Hittle responded, "[s]orta." (*Id.* at 261.) He then stated that "some Detectives" visited him in Mid-Michigan Correctional Facility and told him, "if I come up here and testify in this case, I was most likely ha-- gonna have charges brought against me for conspiracy to commit murder." (*Id.*) In response, the court informed him "[t]here's the risk that you're presented with if you testify." (*Id.*) Hittle then stated that it was his desire to waive his privilege and testify anyway. (*Id.* at 262.) The court responded, "[e]ven knowing what you just told me about the statements that the detectives you say made to you? Even knowing that, you still wish to go ahead

4

and waive your Fifth Amendment right?" (*Id.*) Hittle responded in the affirmative. (*Id.*) The court then asked if Hittle would like more time to speak with an attorney. (*Id.* at 262–63.) Hittle responded in the affirmative and left the courtroom to confer with appointed counsel. (*Id.*) Upon return, Hittle invoked his privilege and did not testify. (*Id.* at 277–79.) Hittle's counsel indicated that he had informed Hittle of his rights and they discussed Hittle's purported testimony and what implications it may have. (*Id.* at 278.) During the discussion, according to counsel, Hittle decided that he might say something incriminating if he testified. (*Id.*) The court then conducted a colloquy with Hittle during which Hittle confirmed that he had made his own decision and no one had threatened or coerced him regarding his Fifth Amendment privilege. (*Id.* at 278–79.)

Based on these facts, Petitioner argues that the prosecutor "drove [Hittle] off the stand," thus undermining Petitioner's defense and violating Petitioner's right to compel witnesses. (Am. Pet., Docket no. 4-6, Page ID 256.) Petitioner argues that Hittle was going to testify to impeach Danny Davis's testimony and corroborate certain facts Petitioner previously told to police. (*Id.*) Petitioner relies on three cases in support of his argument: *Webb v. Texas*, 409 U.S. 95, 93 S. Ct. 351 (1972) (per curiam), *United States v. Arthur*, 949 F.2d 211 (6th Cir. 1991), and *United States v. Thomas*, 488 F.2d 334 (6th Cir. 1973).

In *Webb*, the trial judge singled out a defendant's sole witness and sternly warned him about the consequences of perjury, including a threat that the judge would "personally see" that the witness be prosecuted for perjury if he lied on the stand. 409 U.S. at 96, 93 S. Ct. at 352. As a result, the witness elected not to testify. *Id.* The U.S. Supreme Court found that the judge's "unnecessarily strong" warning undermined the defendant's due process right to present a defense. *Id.* at 98, 93 S. Ct. at 353. In *Arthur*, a district court judge repeatedly advised a witness of his Fifth Amendment privilege. 949 F.2d at 215–16. When the witness insisted on testifying, the judge advised, "I think it's not in your best interest to testify because anything you say may be held against you in another

5

prosecution against you for bank robbery, could and would be used against you." *Id.* at 215. Afterward, the witness invoked his privilege. *Id.* at 216. The Sixth Circuit held that the judge abused his discretion to warn a witness of his privilege against self-incrimination and induced the witness not to testify. *Id.* In *Thomas*, the Sixth Circuit held that the government violated a defendant's due process rights when a secret service agent, at the behest of an Assistant U.S. Attorney, approached the witness in an ex parte communication to warn the witness that he *would be* prosecuted if he testified in the case. 488 F.2d at 335. This out-of-court communication took place immediately after the court and counsel for a co-defendant went to "considerable lengths" to advise the witness of his rights and just prior to when the witness was scheduled to testify. *Id.* at 336. Therefore, the Sixth Circuit found the agent's warning was "unnecessary" and amounted to an attempt to intimidate without a valid purpose. *Id.*

The present case is distinguishable from *Webb* and *Arthur*. Although the record in Petitioner's case indicates that the judge warned Hittle several times of his Fifth Amendment privilege, even after Hittle indicated that he would testify, the judge's questions did not amount to badgering or counseling Hittle not to testify, as in *Arthur*. Moreover, unlike *Webb*, the surrounding facts do not indicate the judge singled out Hittle for admonition against perjury. Rather, the record indicates the judge exercised caution in informing Hittle of his rights, and proceeded at the advice of both the prosecutor and defense counsel. The judge then allowed Hittle to consult in private with independent counsel. Additionally, the witness's age and level of education, about which the judge inquired on the record, support the judge's decision to carefully advise the witness of his rights. (Tr. III, 259.)

The present case is more akin to *Thomas*. For instance, Hittle informed the court that "Detectives" visited him while he was incarcerated and indicated that if he testified, he *may* be

6

prosecuted. However, in *Thomas*, the secret service agent approached a witness immediately preceding the witness's testimony and affirmatively asserted that the government *would* prosecute him if he testified. Importantly, unlike in *Thomas*, Hittle was undeterred by the detectives' visit. He still indicated that he would testify. It was only after he consulted with independent counsel that he invoked his privilege. The detectives' visit aside, Petitioner argues that the prosecutor tried to intimidate Hittle into invoking his privilege by threatening prosecution. However, the record indicates otherwise. The prosecutor's statement that Hittle was still a suspect took place outside of Hittle's presence, suggesting the prosecutor's statements to the court about Hittle's rights did not indirectly threaten Hittle not to testify.

In light of these facts, the Court finds that the government's actions regarding Hittle did not "amount to a substantial interference" with Hittle's "free and unhampered determination to testify." *Roach*, 502 F.3d at 437. The Court therefore rejects Petitioner's argument. However, the Court notes that the exact point at which a prosecutor's communications constitute a "substantial interference" is not entirely clear. Therefore, the Court will grant a certificate of appealability on the issue of witness intimidation regarding Hittle.

Third, Petitioner objects that the magistrate judge erred in finding that Petitioner has failed to meet the requisite standard for raising an issue in collateral attack that could have been raised on direct appeal. This objection refers to Petitioner's argument that there is new evidence that witness Danny Davis committed perjury at trial that warrants a new trial. Petitioner raised the issue for the first time in his motion for relief from judgment. Under Michigan Court Rule 6.508(D)(3), a defendant is prohibited from collaterally attacking a conviction based on claims which could have been raised on appeal, unless defendant demonstrates (1) "good cause for failure to raise such grounds on appeal" and (2) "actual prejudice from the alleged irregularities that support the claim

for relief." Mich. Ct. R. 6.508(D)(3). To allege "actual prejudice," the defendant must demonstrate "a reasonably likely chance of acquittal." *Id.* at 6.508(D)(3)(b)(i).

Based on the record, the Court agrees that the Kalkaska County Circuit Court issued a reasoned decision finding that Petitioner failed to show "good cause" and "actual prejudice" under Michigan Court Rule 6.508(D)(3). The Court further agrees that the procedural rule's existence was firmly established and Petitioner defaulted his claim in state court. Therefore, Petitioner must demonstrate cause and prejudice from the alleged violation of federal law or that a lack of habeas review will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536, 126 S. Ct. 2064, 2076 (2006) ("As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error.").

In this case, even assuming Petitioner has established "good cause," Petitioner fails to demonstrate "actual prejudice." Absent an independent constitutional violation, "[a] claim of actual innocence based upon newly discovered evidence is not grounds for federal habeas relief. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact." *Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999) (citing *Herrera v. Collins*, 506 U.S. 390, 400, 113 S. Ct. 853, 860 (1993)). Furthermore, a witness's post-trial recantation is rarely ground for habeas relief because they are viewed "with extreme suspicion." *See United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991), *superceded by statute on other grounds, as recognized in United States v. Avery*, 128 F.3d 966, 972 (6th Cir. 1997).

Petitioner raises as an independent constitutional violation that the prosecutor knowingly offered false evidence. To prevail on this claim, a defendant must show (1) that the statements were actually false, (2) that the statements were material, and (3) that the prosecutor knew they were false.

8

*See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). The Court finds that, based on the record, Petitioner has failed to show that the alleged perjury was indisputably false or that the prosecutor knew the testimony was false. Since Petitioner cannot establish an independent violation of his due process rights, Petitioner cannot show prejudice for purposes of procedural default. Therefore, the Court finds that Petitioner's claim is procedurally defaulted and barred from further review.

Petitioner's final objection is that the magistrate judge erred in finding the Michigan courts did not unreasonably apply established federal precedent, as determined by the U.S. Supreme Court, in finding there was sufficient evidence for Petitioner's conviction. The Court agrees with the R & R's finding that, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of Petitioner's crimes beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). With specific regard to Petitioner's conviction for conspiracy to commit first-degree murder, because proof of a conspiracy may be derived from the circumstances, acts, and conduct of the parties during the crime, and the jury may draw inferences from those circumstances, *People v. Justice*, 562 N.W.2d 652, 658 (Mich. 1997), the Court concludes that a rational jury could have concluded that Petitioner had the specific intent to jointly pursue the criminal objective of murder, *see, e.g.*, *People v. Mass*, 628 N.W.2d 540, 549 (Mich. 2001). However, because the issue is not entirely free from doubt, the Court will grant a certificate of appealability on the issue of sufficiency of the evidence for the conspiracy to commit murder conviction. Therefore,

**IT IS HEREBY ORDERED** that the magistrate judge's Report and Recommendation issued on August 29, 2012 (Docket no. 40) is **APPROVED AND ADOPTED IN PART** as the Opinion of the Court, and **REJECTED IN PART** with respect to its conclusion that Petitioner's witness intimidation claim regarding Ryan Hittle is procedurally barred.

9

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** with respect to: (1) Petitioner's witness intimidation claim regarding Ryan Hittle, and (2) the sufficiency of the evidence on the conviction for conspiracy to murder (Mich. Comp. Laws §§ 750.157a & 750.316).

**IT IS FURTHER ORDERED** that Petitioner's Objections (Docket no. 41) are **OVERRULED**.

A separate judgment will issue.


Dated: September 28, 2012                             /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE